UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
:
RAMIRO MONTOYA-MONTOYA,                   :
                                          :
                    Petitioner,           :   06 Civ. 3892 (TPG)
                                          :
         – against –                      :   **OPINION**
                                          :
UNITED STATES of AMERICA,                 :
                                          :
                    Respondent.           :
                                          :
------------------------------------------x

Ramiro Montoya-Montoya, a federal prisoner, has filed a motion *pro se* pursuant to 28 U.S.C. § 2255 to vacate or set aside his sentence on the grounds that his conviction in Colombia for purportedly the same narcotics-trafficking conduct as this sentence violates the Double Jeopardy Clause of the Fifth Amendment and a section of the Prisoner Transfer Treaty Act, 18 U.S.C. §§ 4100 *et. seq.* The Government has answered, opposing the motion. The motion is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

This account of the facts underlying Montoya-Montoya's conviction is taken from the Pre-Sentence Report ("PSR"), the motion, and the Government's response to the motion and accompanying exhibits.

Montoya-Montoya, a Colombian citizen, was the principal leader of an international heroin trafficking organization ("the Montoya

Organization") based in Cali, Colombia. The Montoya Organization enlisted couriers to smuggle multi-kilogram quantities of heroin from Colombia into the United States from March 1998 to February 2001. As the head of the Montoya Organization, Montoya-Montoya resided primarily in Colombia, where he managed the procurement and packaging of heroin, recruited couriers, and arranged for shipments of heroin into the United States. Upon arriving in the United States, members of the Montoya Organization sold the heroin to wholesale customers, repatriating the narcotics proceeds to Montoya-Montoya in Colombia.

On January 4, 2001, Montoya-Montoya and three co-defendants were indicted by a United States federal court grand jury on one count of conspiring to import one kilogram and more of heroin into the United States in violation of 21 U.S.C. § 963, and one substantive count of importing approximately three kilograms of heroin into the United States in April 2000 in violation of 21 U.S.C. §§ 952(a) and 960(b)(1)(A) and 18 U.S.C. § 2. On February 17, 2001, the Colombian National Police arrested Montoya-Montoya based on an arrest warrant issued in the United States District Court for the Southern District of New York.

On February 21, 2001, an eight-count superseding indictment was returned in the Southern District of New York charging Montoya-Montoya and five co-defendants with narcotics-trafficking offenses. Count One charged Montoya-Montoya with participating in a conspiracy

to import more than one kilogram of heroin into the United States from Colombia; Buenos Aires, Argentina; La Isla Margarita, Venezuela; and Aruba between March 1998 and February 2001 in violation of 21 U.S.C. § 963.  Counts Two through Seven charged Montoya-Montoya with importing multi-kilogram quantities of heroin into the United States on various dates in 2000 and 2001 in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(A), and 960(b)(1)(B).  Count Eight charged Montoya-Montoya with participating in a conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin in the United States in violation of 21 U.S.C. § 846.

In the meantime, Montoya-Montoya was being prosecuted by the Columbian authorities.  In January or February 2002, Montoya-Montoya pleaded guilty to Colombian charges of narcotics trafficking, conspiracy, and money laundering.  On May 22, 2002, a Colombian court sentenced Montoya-Montoya to an "anticipated sentence" of 96 months' incarceration, to be reduced by one-third as credit for his guilty plea and by the time served in detention pending extradition (totaling roughly 15 months).  Two days after the imposition of his Colombian sentence, on May 24, 2002, Montoya-Montoya was extradited to the United States and presented in the Southern District of New York.

On October 7, 2003, Montoya-Montoya pleaded guilty to all eight counts of the superseding indictment without a plea agreement with the Government.

Following Montoya-Montoya's guilty plea, the Probation Office prepared the PSR. The PSR determined that 47.6 kilograms of heroin were attributable to Montoya-Montoya, resulting in a base offense level of 38 under U.S.S.G. § 3D1.1(c)(1). The PSR found that Montoya-Montoya's base offense level merited a four-level increase under U.S.S.G. § 3B1.2(a) due to his role as "organizer and leader of a major drug distribution conspiracy." After subtracting three levels for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b), the PSR concluded that Montoya-Montoya's net offense level was 39 with a Criminal History Category of I, creating a Guidelines range of 262 to 327 months. The Probation Department recommended a sentence of 262 months.

Prior to his sentencing on December 13, 2005, Montoya-Montoya submitted a sentencing memorandum requesting a non-Guidelines sentence of 120 months, the statutory mandatory minimum. Montoya-Montoya advanced three arguments in support of a more lenient sentence: (1) he objected to the amount of heroin and the leadership role charged to him, (2) he asserted that the Colombian sentence, for purportedly the same conduct for which he was convicted in the United States, should be credited against any sentence received in the United States, and (3) he cited family and personal circumstances. The Government opposed and advocated a sentence within the applicable Guidelines range of 262 to 327 months.

After considering the parties' arguments, the court determined that the Guidelines range was 210 to 262 months, rather than 262 to 327 months as calculated in the PSR, based on a finding that the amount of heroin attributable to Montoya-Montoya was less than 30 kilograms.  While the court rejected Montoya-Montoya's arguments for a reduced sentence based on family and personal circumstances, the court did account for the 15 months Montoya-Montoya served in prison in Colombia.  The court then sentenced Montoya-Montoya to a non-Guidelines sentence of 180 months.  At his request, the court recommended that the Colombian authorities vacate the remaining unserved portion of Montoya-Montoya's Colombian sentence at the conclusion of his United States prison term.  The court also advised Montoya-Montoya of his right to appeal.

The Amended Judgment of conviction was entered on January 10, 2006.  Montoya-Montoya did not appeal.

On May 9, 2006, within the statutory limitations period, the Southern District of New York's *Pro Se* Office received Montoya-Montoya's § 2255 motion.  The motion was filed on May 22, 2006.  The Government opposed the motion in a letter dated January 8, 2007.  Petitioner has not submitted a reply.

## CLAIMS IN THE § 2255 MOTION

Montoya-Montoya asserts that his sentence should be set aside because it is barred by the Double Jeopardy Clause since his conviction in Colombia seemingly stems from the same conduct underlying his United States sentence. Montoya-Montoya also contends that he was extradited to the United States from Colombia without his consent as required by the Prisoner Transfer Treaty Act, 18 U.S.C. §§ 4100, *et. seq*.

## DISCUSSION

<u>Procedural Bar of Double Jeopardy Claim</u>

It is well-settled that federal prisoners may not use proceedings brought under § 2255 as a substitute for an appeal. See <u>Zhang v. United States</u>, 506 F.3d 162, 166 (2d Cir. 2007). Indeed, habeas review is an extraordinary remedy that "will not be allowed to do service for an appeal." <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994). Rather, where a defendant procedurally forfeits his claim by failing to raise it on direct review, the claim may be raised on collateral review in a motion under § 2255 only if the defendant can demonstrate either cause for failing to raise the issue and actual prejudice or that he is innocent. See <u>Rosario v. United States</u>, 164 F.3d 729, 732 (2d Cir. 1998).

Montoya-Montoya has failed to supply any explanation or excuse as to why the double jeopardy argument was not raised in an appeal. Indeed it was not even raised in the district court. Also, there is no

suggestion that he is innocent of the crime charged. He is now precluded from raising the double jeopardy argument in this § 2255 motion.

In any event there is no merit in the argument. The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb." U.S. Const. amend. V. It is well-settled, however, that the constitutional protection against double jeopardy does not apply to successive prosecutions by two different sovereigns because the dual sovereignty doctrine allows two separate sovereigns to prosecute a defendant who violates the laws of both sovereigns in a single act. See Heath v. Alabama, 474 U.S. 82, 88 (1985); United States v. Arena, 180 F.3d 380, 399 (2d Cir. 1999). While a narrow exception to this rule was announced in Bartkus v. Illinois, 359 U.S. 121 (1959), in which the Supreme Court stated that the Double Jeopardy Clause might be violated "despite single prosecutions by separate sovereigns when one prosecuting sovereign can be said to be acting as a tool of the other," id. at 123-24, the Second Circuit has held that the Bartkus exception applies "only in an extraordinary type of case." United States v. All Assets of G.P.S. Automotive Corp., 66 F.3d 483, 495 (2d Cir. 1995).

The dual sovereignty doctrine means that the Double Jeopardy clause has no application in the present case. No exception to the doctrine has been shown.

Prisoner Transfer Treaty Act

Montoya-Montoya makes another argument based on a statute entitled "An Act: To provide for the implementation of treaties for the transfer of offenders to or from foreign countries." This is referred to by the shorthand "Prisoner Transfer Treaty Act." It is codified in 18 U.S.C. §§ 4100 *et. seq.*

In a footnote to his motion, Montoya-Montoya makes the following assertion:

> The transfer was w/o movant's consent under the Transfer Treaty Act of 18 USC §4100-4111.

It should be noted that the entire statute, as codified, runs to § 4115.

The statute is not about extradition, in the sense that it occurred in Montoya-Montoya's case. It deals with the subject of transferring offenders, who are sentenced in one country, to another country to serve that sentence. The statute only applies where there are treaties providing for such procedure. For instance, the U.S. Attorney General is authorized where there is a treaty, to receive custody of a citizen or national of the United States, who has been sentenced in a foreign country, to serve that sentence in the United States.

The statute has no application to Montoya-Montoya's extradition, and, to say the least, contains no provision requiring consent to extradition.

**CONCLUSION**

Montoya-Montoya's § 2255 motion is without merit and is denied. Because Montoya-Montoya has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.

SO ORDERED.

Dated: New York, New York
December 10, 2010

Thomas P. Griesa
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/10/10